UNITED STATES of America, Appellee,

v.

Francis C. DeBROUSE, Appellant.

No. 79–5166.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1980.

Decided June 25, 1981.

Rehearing Denied July 22, 1981.

---

**386**

Albert J. Ahern, Jr., Baileys, Crossroads, Va. (Peter T. Tonnessen, Arlington, Va., on brief), for appellant.

Michael J. Travieso, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., on brief), for appellee.

Before BUTZNER, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

BUTZNER, Circuit Judge:

Francis C. DeBrouse appeals a judgment convicting him, on the verdict of a jury, of violating 29 U.S.C. § 186(b) as charged in five counts of a multicount indictment.[1] In one count he was also charged with aiding and abetting. Briefly summarized, his assignments of error assert insufficiency of the evidence, misconstruction of the Act, objectionable jury instructions, prejudicial variance, inadmissible evidence, prejudice arising out of submission to the jury of the counts on which he was acquitted, and the imposition of an illegal sentence and excessive costs. We affirm the judgment of conviction, but we remand for reconsideration of the assessment of costs.

I

The Taft-Hartley Act, as amended by the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 186(a), prohibits employers from paying or delivering anything of value to labor union officials who represent or seek to represent their employees.[2] A complementary provision, § 186(b),[3] prohibits any person from requesting or accepting anything of value proscribed by § 186(a). Section 186(c) exempts transactions conducted in the regular course of business at the prevailing market price. Infractions of § 186(b) are misdemeanors. See 29 U.S.C. § 186(d).

DeBrouse was president of Local 639 of the Teamsters, and he actually or potentially represented employees of the employers with whom he dealt. With respect to two of the charges, the government offered proof from which the jury could find beyond a reasonable doubt that DeBrouse requested and personally received goods and services from two employers in transactions not conducted in the regular course of business. Also, the jury could find that DeBrouse did not intend to pay the prevailing market price for the goods and services he

1. DeBrouse was acquitted on counts charging another violation of § 186(b), and violation of the Racketeer Influenced and Corrupt Organizations Act, the Hobbs Act, and the Internal Revenue Code.

2. Section 186(a) of Title 29 provides in part:
   (a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, advisor, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—
   (1) to any representative of any of his employees who are employed in an industry affecting commerce; or
   (2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or
   . . . .
   (4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

3. Section 186(b) of Title 29 provides:
   (b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

received. Indeed, he did not pay anything until the employers sued him after his influence over the affairs of the union was destroyed by his failure to win reelection.

On two other occasions, the evidence disclosed that DeBrouse prevailed on employers to award exterminating contracts to a company in which he held a secret interest. DeBrouse did not broach this subject with the management personnel ordinarily responsible for awarding such contracts. Instead, he approached the people with whom he conducted labor negotiations. Without disclosing his own interest in the firm, DeBrouse told them his son was employed by the exterminating company. There was ample proof the transactions were not conducted in the ordinary course of business. The testimony discloses that the significance of DeBrouse's dual role as a solicitor of business and as a labor leader was apparent to the employers. The exterminating company was the direct beneficiary of the contracts, but DeBrouse indirectly benefited through his concealed interest in the firm. His request for a thing of value that would indirectly benefit him is a sufficient predicate for conviction. *See United States v. Pecora*, 484 F.2d 1289, 1294 (3d Cir. 1973).

■ With respect to all four counts, some of the testimony was in conflict, and the evidence could support different inferences. Nevertheless, there was substantial evidence, taken in the light most favorable to the United States, tending to show that DeBrouse was guilty beyond a reasonable doubt. The district court therefore did not err in denying DeBrouse's motion for a judgment of acquittal due to insufficiency of the evidence. *See Bell v. United States*, 185 F.2d 302, 310 (4th Cir. 1951).

## II

In the remaining count on appeal, the government acknowledges that payments an employer made to a friend of DeBrouse's were not transmitted to DeBrouse either directly or indirectly. The indictment alleges that DeBrouse requested a thing of value from an employer and that he caused Vincent Caprio, as his nominee, to receive and accept the thing of value, namely $200 a week between November, 1973, and December, 1974.[4] From the government's proof the jury could find that DeBrouse requested the employer to pay Caprio $200 a week and Caprio received approximately $12,000 for which he performed no services.

When the payments stopped sometime in 1974, Caprio complained to DeBrouse. The employer then experienced labor troubles, and it resumed payment for the rest of the year. The government does not claim that DeBrouse received any of the money that the employer paid Caprio.

DeBrouse argues that since he did not receive any of the money, he did not violate the Act. The district court rejected this argument and construed the Act to encompass the payments made to Caprio. Over DeBrouse's objection, it instructed the jury:

> Also, it is sufficient if you find beyond a reasonable doubt that the defendant requested or demanded that an employer give a thing of value to a third party, with the understanding that the third party was to keep the thing of value and that the defendant would have no access to it.

■ Although there appears to be no precedent precisely on point, we conclude that the district court did not err in its construction of the Act or in its charge to the jury.

Section 186(b)[5] prohibits any person from requesting or demanding any thing of value prohibited by § 186(a). Thus, the government did not have to prove receipt by DeBrouse. It was sufficient to show that by demanding the payments from the employer, he caused Caprio to receive a thing of value prohibited by § 186(a).

---

4. 18 U.S.C. § 2(b) provides: "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

5. Section 186(b) is set forth in note 3.

The critical question therefore is whether § 186(a) prohibited the payments to Caprio. We believe that it did. Section 186(a)[6] prohibits an employer from delivering or agreeing to deliver anything of value to a representative of his employees. The government's proof showed that the employer delivered and agreed to deliver to DeBrouse the precise thing of value DeBrouse demanded, that is, payment of $200 a week to Caprio. Therefore, the fact that the thing of value, which the employer delivered to DeBrouse, took the form of payments to Caprio does not place the transaction beyond the scope of the Act. Having shown the employer's acquiescence in DeBrouse's demand, the government was not also required to prove that DeBrouse received the money.

Moreover, in § 186(c) Congress specifically exempted a number of transactions from the Act. Significantly, it did not exempt payments made by an employer to a third person at the request of a union official. We find nothing in the legislative history that indicates Congress intended courts to engraft such an exception on the Act. Indeed, the legislative history of the 1959 amendments is just to the contrary. It expresses congressional intention "to remove any doubt that all forms of bribery . . . would be prohibited under pain of criminal penalties."[7]

In United States v. Ryan, 350 U.S. 299, 305–06, 76 S.Ct. 400, 405, 100 L.Ed. 335 (1956), the Court, referring to the legislative history of the Taft-Hartley Act, observed that the scope of the House Bill was enlarged in the Senate "to include, in the words of Senator Taft, a 'case where the union representative is shaking down the employer.'" That, of course, is precisely what the evidence disclosed DeBrouse was doing. In Ryan the Court admonished that

the Act was not to be read so narrowly that it defeated congressional purpose. 350 U.S. at 304, 76 S.Ct. at 404. The district court's construction of the Act was consistent with this precept.

Finally, we note that the district court's construction of the Act also is consistent with the construction of the Hobbs Act[8] found in United States v. Provenzano, 334 F.2d 678, 686 (3d Cir. 1964). There the court, dealing with a union official who extorted payments from an employer, said:

[W]e hold that it is not necessary to prove that the extortioner himself, directly or indirectly, received the fruits of his extortion or any benefit therefrom. The Hobbs Act does not require such proof. It is enough that payments were made at the extortioner's direction to a person named by him.

In like vein, we hold that the Taft-Hartley Act, as amended, does not require proof that a union official, directly or indirectly, received any part of the money that an employer paid to a third party at the official's request. It is enough that the union official caused the third party to receive the money by demanding payment from an employer who is subject to the Act.

III

DeBrouse's remaining assignments of error require only brief discussion.

We cannot accept DeBrouse's argument that on all counts he was entitled as a matter of law to the exemption provided in § 186(c)(3).[9] Whether his transactions with employers were "at the prevailing market price in the regular course of business" presented factual questions for the jury. The court's instructions placed the burden of proof with respect to this issue on

6. The pertinent provisions of § 186(a) are set forth in note 2.

7. S.Rep.No. 187, 86th Cong., 1st Sess. (1959) reprinted in [1959] U.S.Code Cong. & Admin. News 2318, 2360. United States v. Lanni, 466 F.2d 1102, 1103–05 (3d Cir. 1972), thoroughly reviews the legislative history.

8. 18 U.S.C. § 1951.

9. Section 186(c) of Title 29 provides in part:
   The provisions of this section shall not be applicable . . . (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business.

the prosecutor, and the evidence, viewed in the light most favorable to the government, is sufficient to sustain the verdict. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Contrary to DeBrouse's argument, the statutory term, "in the regular course of business" in itself provides an adequate standard for determining whether the exemption applies. It therefore was unnecessary for the court to define this phrase, especially in the absence of a proffered definition by De-Brouse.

## IV

We find no prejudicial variance between the indictment and the evidence. Rule 52(a) of the Federal Rules of Criminal Procedure provides that "[a]ny ... variance which does not affect substantial rights shall be disregarded." In *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630–31, 79 L.Ed. 1314 (1935), the Court held that substantial rights are deemed unaffected if the following requirements are met:

> (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.... [I]f, upon an examination of the entire record, substantial prejudice does not appear, the error must be regarded as harmless.

Application of these principles demonstrates that DeBrouse's assertions of variance with respect to three counts are unfounded.

### A

The count charging the Caprio payments, which we discussed in Part II, *supra*, alleged that Caprio was DeBrouse's "nominee." Citing *Schuh Trading Co. v. CIR*, 95 F.2d 404, 411 (7th Cir. 1938), and several other similar cases, DeBrouse contends that the term "nominee" described Caprio as the agent or trustee of DeBrouse and therefore alleged that Caprio was a conduit of funds to DeBrouse. Since the government neither claimed nor proved that Caprio gave DeBrouse the money Caprio received from the employer, DeBrouse contended that there was a variance between the indictment and the government's proof. The district court rejected this argument and, without actually amending the indictment, stated that the word "nominee" was surplusage. DeBrouse complains that this was *in fact an unlawful amendment of the indictment*.

The record pertaining to this count obviously would preclude another prosecution of DeBrouse for this offense. Our inquiry therefore involves the first test set forth in *Berger*, that is, whether the indictment informed DeBrouse of the charges and enabled him to present his defense without being prejudiced by surprise. 295 U.S. at 82, 55 S.Ct. at 630–31. The indictment clearly informed DeBrouse that he was being charged with causing Caprio to receive and accept the payments from the employer as a result of DeBrouse's demand. In accordance with the district court's construction of the statute, which we approved in Part II, it was immaterial whether Caprio retained the payments or passed them to DeBrouse. Consequently, there was no prejudicial variance or unlawful amendment of the indictment. As we pointed out in *United States v. Holt*, 529 F.2d 981, 983 (4th Cir. 1975), "an indictment is amended only when it is so altered as to charge a different offense from that found by the grand jury." This did not occur.

Moreover, DeBrouse's defense was not impeded by surprise. His factual defense did not depend on the designation of Caprio as his nominee. On the contrary, he testified that he did not ask the employer to pay Caprio and that he did not even know that Caprio was receiving $200 a week. Therefore, we conclude that DeBrouse was not prejudiced either by the variance he asserts or by the court's treatment of the description of Caprio as mere surplusage.

### B

The count of the indictment pertaining to DeBrouse's receipt and acceptance of

carpet from an employer does not allege the installation of the carpet as an element of his acceptance of the carpet. Nevertheless, we find no fatal variance. The indictment charged the offense in the words of the statute. In *Ledbetter v. United States*, 170 U.S. 606, 612, 18 S.Ct. 774, 776, 42 L.Ed. 1162 (1898), the Court said:

> [U]pon an indictment for a statutory offence the offence may be described in the words of the statute, and it is for the defendant to show that greater particularity is required by reason of the omission from the statute of some element of the offence. Where the statute completely covers the offense, the indictment need not be made more complete by specifying particulars elsewhere obtained.

The invoice for the transaction, which was made available to DeBrouse in pretrial discovery, showed that the employer's firm was required to install the carpet. Thus, DeBrouse's acceptance of the carpet contemplated acceptance of installed carpet, not simply acceptance of the necessary rolls of carpet to furnish his house. Since DeBrouse was a party to the transaction, it is apparent that he knew its terms and could not have been taken by surprise. Furthermore, the trial record concerning this count is sufficiently documented to prevent another prosecution for the same offense. *See United States v. Quicksey*, 525 F.2d 337, 341–42 (4th Cir. 1975).

### C

■ DeBrouse's final complaint of variance pertains to the count that charges that on or about September, 1974, he "did . . . request, demand, receive and accept" from an employer an exterminating contract for a company in which he had a secret interest. From the evidence the jury could find that DeBrouse sought work for the exterminating firm in 1974, but no contract was awarded at that time. The employer did not hire the firm until 1976.

We conclude that there was no prejudicial variance. The request in 1974 was in itself a violation of the statute. It was not necessary for the indictment to allege a period running from 1974 to 1976, for the dates are not essential elements of the offense. *See Ledbetter v. United States*, 170 U.S. 606, 612, 18 S.Ct. 774, 776, 42 L.Ed.2d 1162 (1898); *United States v. Somers*, 496 F.2d 723, 742–46 (3d Cir. 1974).

### V

The statute of limitations does not bar prosecution of either of the two counts DeBrouse specifies. In both instances, the critical date is November 1, 1973.

### A

■ The indictment charged that "on or about November 1973 and continuing thereafter until on or about December 1974" DeBrouse requested payments for Caprio and Caprio received them. The government proved DeBrouse initially requested payments for Caprio before November 1, 1973, but the payments were suspended in 1974. From the evidence the jury could find that DeBrouse demanded that they be resumed in 1974 after the critical limitation date. Thus, DeBrouse caused Caprio to receive payments in 1974 as alleged in the indictment. In view of this, we need not determine whether the indictment alleged a continuing offense as urged by the government.

### B

■ With respect to the other count about which DeBrouse complains, the indictment charged that DeBrouse received carpet for his house from an employer on or about November 1, 1973. The evidence disclosed that sometime before November 1, 1973, DeBrouse requested the carpet. The invoice stated that installation by the employer's firm was included in the purchase price, but this work was not finished until November 1, 1973. The jury could find that within the limitation period DeBrouse received and accepted the carpet inasmuch as the invoice showed that installation was part of the deal.

Contrary to DeBrouse's contention, prosecution of these counts was not barred as a

matter of law. "[It is not] necessary to prove that the offence was committed upon the day alleged, unless a particular day be made material by the statute creating the offence. Ordinarily, proof of any day before the finding of the indictment, and within the statute of limitations, will be sufficient." *Ledbetter v. United States*, 170 U.S. 606, 612, 18 S.Ct. 774, 776, 42 L.Ed.2d 1162 (1898).

## VI

We find no merit in DeBrouse's other assignments of error except with respect to the taxation of costs. The court ordered DeBrouse to pay the costs of prosecution as a condition of probation on one count. Without receiving a bill of costs from the government, the clerk included in the taxation of costs all witness and marshal fees. DeBrouse, however, was convicted on only five of the fifteen counts on which he was indicted. Some witnesses testified only about events that pertained to the counts on which he was acquitted.

Section 1918 of Title 28 authorizes the court to order the defendant to pay the costs of prosecution when he is convicted. This statute does not contemplate that a defendant should pay the costs of prosecution for charges on which he was acquitted. Accordingly, on remand the government should submit a bill of costs for witness and marshal fees pertaining to those witnesses whose testimony was material to the counts on which DeBrouse was convicted. 28 U.S.C. §§ 1918 and 1920. *See United States v. Pommerening*, 500 F.2d 92, 101 (10th Cir. 1974).

The judgment is affirmed, and the case is remanded for the proper taxation of costs.