**LEVIN–RICHMOND TERMINAL CORPORATION, Plaintiff,**

v.

**INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION, LOCAL 10, et al., Defendants.**

**No. C–90–1460 SAW.**

United States District Court, N.D. California.

Nov. 29, 1990.

Mark R. Thierman, Wendy A. Cheit and Carole E. Seliger, Thierman, Cook, Brown & Prager, San Francisco, Cal., for plaintiff.

William H. Carder, Leonard, Carder, Nathan, Zuckerman, Ross, Chin & Remar, San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

This suit by plaintiff Levin–Richmond Terminal Corporation ("LRT") against International Longshoremen's and Warehousemen's Union Locals 10, 34, and 91 and their agents (collectively "ILWU") revolves around a Memorandum of Understanding ("MOU") entered into by plaintiff and defendants on June 30, 1983. Plaintiff contends that the MOU is illegal and unenforceable because it provides that four ILWU members, whom plaintiff refers to as "ghosts," will receive compensation based upon work performed by LRT employees who are members of Operating Engineers Local 3 ("Local 3"), not ILWU. Plaintiff claims that defendants' allegedly extortionate conduct which led to the signing of the MOU, coupled with defendants' alleged threats of violence and labor unrest if plaintiff did not honor the agreement, constitute a pattern of unlawful racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq.

An understanding of the labor dispute between plaintiff and defendants in late 1982–early 1983 is essential to decide the motions before the Court. LRT is a cargo-loading business located at the Port of Richmond, in Richmond, California. In December 1982 LRT was party to a collective bargaining agreement with Local 3 providing for the loading and unloading of cargo at its Richmond facility. That month ILWU lay claim to this work and picketed plaintiff at its facility. This picketing led plaintiff to file unfair labor practice charges against ILWU with the National Labor Relations Board ("NLRB"). Plaintiff and ILWU settled the dispute, with the union locals disclaiming the loading and unloading work, but reserving their right to picket barges or ships which have historically employed, but are not currently employing, ILWU workers.

In June 1983 ILWU again commenced picketing at the LRT facility, purportedly because the Sunda Career General Steamship Company employed non-ILWU labor to perform work that ILWU workers had historically performed. On June 26, 1983, LRT sought and obtained a temporary restraining order from the Contra Costa Superior Court placing limitations on ILWU's picketing. According to plaintiff, defendants continued to picket in huge numbers and engaged in violence, notwithstanding the temporary restraining order. This disruption to LRT's business was so great that LRT allegedly capitulated to ILWU and signed the MOU, providing for the "ghost" payments.[1] Plaintiff alleges that from June 1983 until December 1989, plaintiff continued to operate under the MOU because of continual threats of mass picketing and violence.

Plaintiff moves (1) to strike several of defendants' affirmative defenses; (2) to strike the Declaration of Frank Billeci in opposition to plaintiff's motion for partial summary judgment; and (3) for partial summary judgment on its claim that the MOU is unlawful and unenforceable.

### I. *Plaintiff's Motion to Strike Affirmative Defenses*

Pursuant to Federal Rule of Civil Procedure 12(f), plaintiff moves to strike defendants' first, fourth, fifth, sixth, and seventh affirmative defenses contained in their answer to the complaint,[2] on the ground that they are insufficient as a matter of law.[3] Motions to strike affirmative defenses are disfavored. Before a motion to strike defenses may be granted, "the Court must be convinced that there are no questions of fact, that any questions of law are

clear and not in dispute, and that under no set of circumstances could the defenses succeed." *Systems Corp. v. American Tel. & Tel. Co.*, 60 F.R.D. 692, 694 (S.D.N.Y.1973). Moreover, a motion to strike defenses should not be employed as a vehicle for determining "disputed and substantial questions of law." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). Each of the challenged affirmative defenses will be discussed in turn.

### A. *First Affirmative Defense*

■ In their first affirmative defense defendants contend that various provisions of RICO, 18 U.S.C. §§ 1961 et seq., are unconstitutionally vague. In particular, defendants object to the definition of "pattern of racketeering," § 1961(5), and the provision making it unlawful "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." § 1962(c). These provisions, defendants argue, are void since they fail to provide adequate notice of the conduct they prohibit. Plaintiff notes that the constitutionality of RICO has frequently been upheld, arguing that this defense is therefore insufficient as a matter of law. Nonetheless, Justice Scalia's concurring opinion in the Supreme Court's recent decision in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), suggests that the constitutionality of RICO presents a substantial legal question. The majority in *Northwestern Bell* attempted to develop a meaningful concept of "pattern of racketeering activity." Noting that

---

**1.** The MOU provides in paragraph two that "as to bulk cargo," LRT shall "in accordance with past practice, perform all work except linemen work with its own employees." These employees were members of Local 3, not ILWU. In loading or unloading vessels with bulk cargo, however, the MOU provides that LRT will "order and compensate" four *ILWU* members: one supercargo, one walking boss, one hatch tender, and one unskilled laborer. None of these positions involves "linemen" work.

Defendants concede that plaintiff paid ILWU members for work they did not perform, al-

though they emphasize that the selected workers made themselves available to perform the work for which they were paid.

**2.** Defendant ILWU Locals 10, 34, and 91 submitted identical answers to the complaint.

**3.** Rule 12(f) provides in relevant part:

**Motion to Strike.** Upon motion made by a party ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

the majority has "added nothing to improve our prior guidance," Justice Scalia, joined by three other Justices, warned:

> No constitutional challenge to this law has been raised in the present case, and so that issue is not before us. That the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance bodes ill for the day when that challenge is presented.

*Id.* 109 S.Ct. at 2909 (Scalia, J., concurring). Since four Justices of the Supreme Court find that RICO's constitutionality is at least suspect, defendants' unconstitutionality defense raises a substantial legal question that cannot be deemed insufficient as a matter of law for the purpose of plaintiff's motion to strike.[4]

### B. *Fourth Affirmative Defense*

■ Defendants claim in their fourth affirmative defense that plaintiff's suit is barred by the four-year statute of limitations applicable to claims arising under RICO. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). Plaintiff responds that since it claims damages only for those injuries suffered during the four-year period prior to the filing of the complaint, the statute of limitations is satisfied and accordingly, the Court should strike this defense.

Disputed questions of fact and law remain, however, with respect to when plaintiff's RICO action accrued. Defendants contend that the action accrued in June 1983, when the MOU was signed. Plaintiff counters that a new action accrued with every "ghost" payment it made to ILWU workers. The Supreme Court in *Agency Holding* expressly reserved the question of when RICO actions accrue for statute of limitation purposes. *Id.* at 156–57, 107 S.Ct. at 2767. The Ninth Circuit has since adopted a rule of "separate accrual," wherein a "cause of action accrues when

*new overt acts* occur within the limitations period, even if ... other acts were committed outside the limitations period." *State Farm Mutual Automobile Ins. Co. v. Ammann,* 828 F.2d 4, 5 (9th Cir.1987) (Kennedy, J., concurring) (emphasis added), *cited with approval in Beneficial Standard Life Ins. Co. v. Madariaga,* 851 F.2d 271, 275 (9th Cir.1988); *see also Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1103 (2d Cir.1988) (RICO actions accrue with each "new and independent injury"), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

At this nascent stage of the litigation, this Court cannot determine as a matter of law whether defendants committed "new overt acts" within the statutory period. Whether each of plaintiff's continued "ghost" payments to ILWU workers during the statutory period constitutes a new and separate injury, despite the fact that the MOU was signed outside the statutory period, presents a substantial question of law. Whether defendants engaged in overt conduct to force the continued payments presents a substantial question of fact. Accordingly, the Court will not strike defendants' statute of limitations defense.

### C. *Fifth Affirmative Defense*

Defendants assert the equitable defense of laches in their fifth affirmative defense. Because substantial disputed issues remain with regard to defendants' statute of limitations defense, the Court refuses to strike defendants' laches defense as well.

### D. *Sixth Affirmative Defense*

In their sixth affirmative defense, defendants assert that plaintiff's suit is barred by the doctrine of "accord and satisfaction." Defendants concede that they have incorrectly labeled this defense and request permission to amend their answer to allege the defense of "release." The Court grants this request.

---

**4.** No appellate court has directly addressed the constitutionality issue since *Northwestern Bell.* It is significant, however, that two circuit courts of appeals have remanded for consideration of RICO's constitutionality in light of *Northwestern Bell. See, e.g., Busby v. Crown Supply, Inc.,* 896 F.2d 833, 836 (4th Cir.1990); *Newmyer v. Philatelic Leasing, Ltd.,* 888 F.2d 385, 397–98 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2169, 109 L.Ed.2d 499 (1990).

## E. *Seventh Affirmative Defense*

 Defendants' seventh affirmative defense alleges that plaintiff is equitably estopped from claiming that the MOU was extortionate because, according to defendants, it was plaintiff, not defendants, who proposed the "ghost" payment arrangement. Plaintiff labels this defense insufficient and scandalous. Plaintiff's contention is not well-taken. Equitable estoppel principles are applicable to actions arising under federal law. *Hass v. Darigold Dairy Prods. Co.*, 751 F.2d 1096, 1099 (9th Cir.1985). According to the Ninth Circuit, equitable estoppel is

> [t]he doctrine by which a person may be precluded by his act or conduct ... from asserting a right which he otherwise would have had.... The effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct.

*Id.* at 1099–1100 (quoting Black's Law Dictionary 483 (5th ed. 1979)); *accord Amalgamated Clothing & Textile Workers Union v. Ratner Corp.*, 602 F.2d 1363, 1370 (9th Cir.1979). Given defendants' allegations that plaintiff proposed and acquiesced in the MOU, this defense raises substantial questions of fact and law inappropriate for resolution upon a motion to strike.

## II. *Plaintiff's Motion to Strike Billeci Declaration*

██ Defendants have submitted a Declaration and Supplemental Declaration by Frank Billeci, President of defendant ILWU Local 34 from 1977 through 1989. In his declaration, Billeci describes the events surrounding the labor dispute between the parties from December 1982 through June 1983, including the signing of the MOU. Plaintiff moves to strike this declaration on the grounds that (1) Billeci lacked personal knowledge as to many of the events he described; (2) the declaration contradicts evidence given in a proceeding before the NLRB; and (3) the declaration contains inadmissible hearsay. The Court finds that this declaration was based on Billeci's personal knowledge, that plaintiff's hearsay allegations lack foundation, and that Billeci is not bound by the evidence given in the NLRB proceeding. Accordingly, the Court denies the motion to strike.

## III. *Plaintiff's Motion for Partial Summary Judgment*

Plaintiff moves for summary judgment on its claim that the MOU is unenforceable as a matter of law for violating the Hobbs Anti–Racketeering Act ("the Hobbs Act"), 18 U.S.C. § 1951, and Section 302 of the Labor Management Relations Act of 1947 ("the LMRA"), 29 U.S.C. § 186. The Court notes that plaintiff is not seeking summary judgment on its claim that defendants committed two or more predicate criminal acts in violation of RICO.

## A. *Enforceability of the MOU under the Hobbs Act*

██ Plaintiff contends that the MOU is unlawful under the Hobbs Act, 18 U.S.C. § 1951, because the agreement is extortionate on its face.[5] Although in *United States v. Green*, 350 U.S. 415, 417–20, 76 S.Ct. 522, 524–26, 100 L.Ed. 494 (1956), the Supreme Court acknowledged that extortionate conduct to obtain money from an employer for "unwanted, superfluous and fictitious services of laborers" is prohibited by Section 1951, that pronouncement does not end the inquiry. In *United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973), the Court limited the

---

5. Section 1951 provides in pertinent part:
 (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by ... extortion or attempts or conspires so to do ... shall be fined not more than $10,000, or imprisoned not more than twenty years, or both.

 ....

 (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

application of the Hobbs act to union activities by holding that the "Hobbs Act did not sweep within its reach violence during a strike to achieve *legitimate* collective-bargaining objectives." *Id.* at 404, 93 S.Ct. at 1012 (emphasis added). Instead, the Act prohibits only the "wrongful" taking of an employer's property through force or violence. *Id.* at 400, 93 S.Ct. at 1009.

In light of this limitation, material questions of fact remain to be adjudicated. The Court finds that although the MOU clearly mandates "ghost" payments, the so-called *extortion* is not plain on the document's face. Defendants do not dispute that they picketed plaintiff's facility prior to the signing of the MOU, but deny that they did so to exact, or extort, the payments in question. Accepting defendants' allegations and submitted declaration as true, as this Court must, defendants picketed plaintiff in June 1983 to protest that ILWU members had not been hired to perform the work of loading the vessel then docked at the terminal—work historically performed by ILWU at that terminal. It is premature to determine whether this motive, if established, constitutes a "legitimate collective bargaining objective." Moreover, according to defendants, not only did they not use force or threats of force to exact the payments from plaintiff, but the payments were initially proposed by *plaintiff.*

In order to award summary judgment, the Court must first find that "there is no genuine issue as to any material fact" and that "the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). Further, the inferences to be drawn from the underlying facts

must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). At this stage of the proceedings, the Court must accept as true defendants' above allegations. Because the agreement is not on its face extortionate, and the parties dispute whether the MOU was merely "a transparent bribe for labor peace," the Court denies plaintiff's motion for summary judgment on the MOU's enforceability with respect to its argument that the MOU violates the Hobbs Act.

**B.** *Enforceability of the MOU under the LMRA*

██ Plaintiff claims that the MOU also violates Section 302 of the LMRA, 29 U.S.C. §§ 186(a) & (b).[6] The LMRA prohibits payments by an employer to a union or its representatives, as well as the request or acceptance by a labor organization of such payments, except for specifically enumerated purposes inapplicable here. The purpose of Section 186 is "to protect employers from extortion and to insure honest, uninfluenced representations of employees." *United Steelworkers of America v. United States Gypsum Co.,* 492 F.2d 713, 732 (5th Cir.), *cert. denied,* 419 U.S. 998, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974). Since the MOU requires plaintiff to pay ILWU represented employees for services they did not render, plaintiff argues that the agreement is in violation of Sections 186(a) and (b) and should be declared unenforceable.

Defendants respond that Section 186(a) requires plaintiff to establish that the proscribed payments were made to a "repre-

---

**6.** Section 186 provides in relevant part:
 (a) It shall be unlawful for any employer ... to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—
 (1) *to any representative of any of his em*ployees who are employed in an industry affecting commerce; or ·
 (2) to any labor organization, or any officer or employee thereof, which represents ... any of the employees of such employer who are employed in an industry affecting commerce....

 . . . .
 (b) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by *subsection (a) of this section.*
 . . . .
 (d) Except for violations involving transactions covered by subsection (d)(1) of this section, any person who willfully violates this section shall, upon conviction thereof, be guilty of a felony....

sentative" of plaintiff's employees or to a "labor organization, officer, or employee of a labor organization." The MOU on its face provides only for payments to "ILWU represented people," not to the union locals or their employees. Therefore, defendants contend, plaintiff has failed to establish that the MOU violates Section 186.

This debate raises the question, not heretofore addressed in this Circuit, of whether Section 186 prohibits payments made by an employer to third parties—in this case, ILWU represented workers—where those workers are not union employees or representatives and do not forward the money to the union or union employees.[7] Plaintiff cites the Fourth Circuit's opinion in *United States v. DeBrouse*, 652 F.2d 383, 387–88 (4th Cir.1981) to support its contention that a union may still violate Section 186 where the recipient of employer payments is a third party, rather than a union employee. In *DeBrouse* the defendant, a union president, was convicted of violating Section 186(b) because he demanded, in a "shake down of the employer," that the employer make payments to a third party of his selection. The Fourth Circuit upheld the conviction because the defendant had in fact received the very "thing of value" that he wished to extort from the employer— payments to a third party of his choice. *Id.* at 388. Although the defendant received none of the payments, it was enough that he caused the third party to receive the money by extorting payments from the employer.

Similarly, in *United States v. Carlock*, 806 F.2d 535, 554–555 (5th Cir.1986), *cert. denied*, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987), the Fifth Circuit followed the court's lead in *DeBrouse* to uphold the conviction of a union employee who "knowingly and willfully" requested or demanded that the employer make payments to a third person at his behest. *Id.*

at 554–55. In both cases, the courts reasoned that the defendants had received a thing of value from the employer, in derogation of Section 186, because they had *demanded* that the employer pay third parties of their own choosing.

Even if this Court were to follow the Fourth and Fifth Circuits' leads and hold that an agreement could violate Section 186 by providing for payments to third parties, rather than to a union or union employees, such a ruling would be of no avail to plaintiff in its motion for partial summary judgment. Defendants have submitted evidence to the effect that it was *plaintiff*, not defendants, who proposed and pushed the "ghost" payment arrangement. Accepting defendants' claims as true for the purpose of this motion, defendants themselves never requested or demanded that the employer pay the ILWU represented workers. If that was in fact the case, then defendants did not accept a "thing of value" from plaintiff and derived no benefit from the payments. Since a genuine dispute of fact remains as to whether defendants demanded the payments, it cannot be said as a matter of law that the MOU violates Sections 186(a) or (b). On its face, the agreement is silent with respect to how the union itself benefits from the "ghost" payments. For these reasons, the Court denies plaintiff's motion for summary judgment on the MOU's unenforceability with respect to its contention that the agreement violates the LMRA.

Accordingly,

IT IS HEREBY ORDERED that:

(1) Plaintiff's motion to strike defendants' first, fourth, fifth, and seventh affirmative defenses is DENIED;

(2) Plaintiff's motion to strike defendants' sixth affirmative defense is GRANTED with leave to amend to state a defense of "release";

---

**7.** Plaintiff alleges in his complaint, with no offer of proof, that the ILWU represented workers who received the "ghost" payments included union officers and others who held positions of influence within the union. Defendants dispute this, and the MOU is silent as to the identity of the actual recipients of the payments. Since

there is a genuine issue of fact regarding whether the union itself or union employees received the payments, this Court is bound, for the purposes of this motion, to accept defendants' claim that the pay recipients were *not* in the union's employ.

(3) Plaintiff's motion to strike the Billeci Declaration is DENIED; and

(4) Plaintiff's motion for partial summary judgment is DENIED.