UNITED STATES of America, Plaintiff–Appellee,

v.

Dennis Allen BREWER, Defendant–Appellant.

No. 92–5118.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1993.

Decided Aug. 16, 1993.

---

**1432**

Douglas James Wood, Roberts & Wood, Riverdale, MD, argued for defendant–appellant.

Flora Amelia Francis, Sp. Asst., U.S. Atty., Alexandria, VA, argued (Richard Cullen, U.S. Atty., on the brief), for plaintiff-appellee.

Before WIDENER, PHILLIPS, and HAMILTON, Circuit Judges.

## OPINION

PHILLIPS, Circuit Judge:

Appellant Dennis Brewer challenges his convictions on eight counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), pressing a number of claimed errors by the district court for our review. Finding no reversible error, we affirm.

### I

Acting on Arlington County Police Detective Samuel Dale's testimony recounting facts provided by his informants, a federal grand jury in the Eastern District of Virginia indicted Brewer on fourteen counts of possession with intent to distribute fifty or more grams of crack cocaine (21 U.S.C. § 841(a)(1)). Before trial, the government moved to dismiss six counts for improper venue because a witness interview revealed that they occurred in the District of Colum-

bia rather than the Eastern District of Virginia. Brewer immediately sought dismissal of the entire indictment, contending that Dale necessarily had perjured himself to obtain Brewer's indictment on the six counts in question and that this perjury had "infected" the grand jury's decision to indict on the other eight counts. Finding no convincing evidence that Dale perjured himself, the district court granted the government's motion and denied Brewer's.

Another of Brewer's pretrial motions met with more success. In the course of an earlier custodial interrogation concerning another individual, Brewer allegedly had admitted to federal marshals that he was a "drug dealer." The government wanted to use the admission at trial, but the district court granted Brewer's motion to suppress it because the marshals had failed to give him the *Miranda* warning before questioning.

At trial, the government relied principally on testimony by three members of a drug distribution ring centered in the Washington, DC metropolitan area and known as the "Rodriguez/Polanco organization": Francisco Perez, Romulo DeLeon, and Edwin Rodriguez.[1]

Each earlier had pled guilty to charges arising out of his participation in the ring and received a substantial sentence, and they testified against Brewer pursuant to plea agreements obligating the government to seek sentence reductions in exchange for substantial cooperation. Each testified that he had delivered drugs to Brewer during a period beginning "around March or April or so" of 1990 and ending in October of that year. DeLeon provided details of three deliveries, one in the District of Columbia[2] and two in Virginia. Perez gave the specifics of two more in Virginia. Rodriguez said he'd made about ten deliveries to Brewer in the District and Virginia and testified to the details of five of them, four in Virginia and one in the District.

---

1. DeLeon, Perez, and Edwin Rodriguez delivered "crack" cocaine for the drug ring, which was led by Edwin's brother Ozzie and Francisco Polanco.

2. Brewer's counsel timely objected to testimony by DeLeon and Rodriguez concerning Brewer's uncharged conduct in DC.

The government also put on Detective Dale, the lead investigator of the "Rodriguez/Polanco organization." His testimony concerned the methods of communication used by the organization—pagers, cellular phones, extensive long distance calls—and what they meant to a narcotics investigator.

The government also called Waquesha Scott, Brewer's fiancee, to testify about a statement she'd allegedly made to Deputy United States Marshal Martin Flynn that Brewer "dealt drugs." On the stand, Scott denied making the statement and volunteered, without being asked, that the marshals had tried to induce her to make such a statement by telling her that Brewer had already admitted as much to them. She then denied that Brewer was a drug dealer or that she'd ever seen him with drugs. Called to rebut Scott's denial of the prior statement, Flynn testified that Scott told him, in the course of another investigation, that Brewer dealt drugs but that she'd only seen Brewer with them once.

Brewer called no witnesses. At the close of his case he moved for a mistrial based on Scott's revelation of the suppressed confession, but the district court denied the motion after noting the absence of contemporaneous objection or motion to strike and offering to provide a curative instruction at Brewer's request.

Brewer also sought a judgment of acquittal on Count Six of the original indictment, which alleged that Brewer possessed crack cocaine with intent to distribute it "on or about February 1990," claiming that no one testified to a transaction at that time. Identifying the indicted transaction as the one Rodriguez conducted in "March or April or so" of 1990, the district court denied Brewer's motion.

The jury found Brewer guilty on all eight counts, and the district court entered judgments of conviction accordingly, sentencing him to 360 months. He appealed.

## II

When the six District of Columbia transactions in Brewer's original indictment were dismissed on the government's motion, Brewer unsuccessfully argued for dismissal of the entire indictment as improperly obtained. He renews the contention here, arguing that the district court's refusal to exercise its supervisory authority and dismiss the whole indictment before trial constituted an abuse of discretion. We disagree.

■ The district court can exercise its supervisory authority to dismiss an indictment for errors in grand jury proceedings only where an irregularity prejudicing the defendant has been shown. *Bank of Nova Scotia,* 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988). Brewer characterizes the irregularity here as the presentation of perjured testimony to the grand jury, but we concur with the district court's factual finding that no convincing evidence of perjury was adduced. The irregularity in question, then, is presentation to the grand jury of erroneous testimony about venue for the six counts of the indictment ultimately dismissed by the government.

■ Where, as here, a grand jury irregularity isn't of constitutional dimension, prejudice justifying dismissal of an indictment exists only where (1) the irregularity substantially influences the decision to indict or (2) "there is grave doubt that the decision to indict was free from the substantial influence of such [irregularities]." *Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. at 2374 (internal quotation marks and citation omitted). Brewer can't demonstrate either of these conditions with respect to the eight counts of his indictment on which he ultimately was convicted. Those counts are legally unrelated to the six charges ultimately dismissed because of Dale's erroneous testimony, and the evidence Dale provided to support indictment on the former is independent of that he provided to secure indictment on the latter. Nothing in the record suggests that his erroneous grand jury testimony pertaining to the six dismissed counts substantially influenced the jury's decision to indict Brewer on the other eight or induces grave doubt that the grand jury's decision to do so was free from improper influence stemming from Dale's erroneous testimony. The district court correctly refused to dismiss the remainder of Brewer's indictment.

## III

Brewer also challenges four of the district court's decisions on evidentiary matters. We review these challenges *seriatim.*

### A

Brewer first contends that the district court erred in admitting the testimony of his fiancee, Waquesha Scott, because she was called solely to provide improper character evidence "for the purpose of proving action in conformity therewith on a particular occasion," evidence generally forbidden[3] by Fed. R.Evid. 404(a).[4] The government argues (1) that Brewer failed to preserve this error and (2) that Scott was called to provide testimony that she'd told federal marshals Brewer was a "drug dealer," which the government claims constituted evidence of "of other crimes, wrongs, or acts" admissible under Rule 404(b) to show Brewer's intent to distribute and knowing possession. Both intent and knowledge are elements of the indicted offense put in issue by Brewer's "not guilty" plea. *See United States v. Sparks,* 560 F.2d 1173, 1175 (4th Cir.1977).

▮▮ We agree with the government that Brewer failed to preserve this error. Before Scott took the stand, Brewer's counsel objected to the government's request to treat Scott as a hostile witness. The district court sustained that objection, requiring the government to demonstrate adversity before it could treat Scott as hostile. Immediately thereafter followed this frequently interrupted examination of Scott by the government:

Q. Were you interviewed by United States Marshals about Mr. Brewer?

A. Yes, I was.

Q. And did you tell the marshals—

[Brewer's counsel]: Objection, Your Honor.

[United States]: I'll rephrase the question ...

[District Court]: All right.

Q. Does Dennis Brewer deal drugs?

A. No.

[Brewer's counsel]: Objection.

[District Court]: Overruled.

A. No, he does not. They tried to make me say he did.

Q. Has he ever dealt drugs?

A. No, he has not.

Q. Have you ever seen him with drugs?

A. No ...

Q. Do you remember when you were interviewed by the marshals?

A. ... I remember ...

Q. And isn't it true that you told the marshals at that time that—

[Brewer's counsel]: Objection, Your Honor.

[District Court]: Stand up and tell me what the objection is.

[Brewer's counsel]: It's his witness.

[District Court]: Overruled. You [the United States] may now lead [the witness].

J.A. at 262–63. While the transcript excerpt reveals that Brewer's counsel objected to the question "Does Dennis Brewer deal drugs?" (after Scott had already answered it), he stated no basis for his objection. To preserve an objection to admissibility for appeal, Fed.R.Evid. 103(a) requires such a statement unless the specific ground was "apparent from the context." The convoluted nature of the above questioning, in which Brewer's counsel apparently focused on the form of the government's questions rather than their content, reveals that was not the case.

Where counsel fails adequately to present and preserve an objection on the record, we review the admission of evidence solely for plain error. Fed.R.Evid. 103(a)(1), 103(d); Fed.R.Crim.P. 52(b). The Supreme Court's recent decision in *United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), clarifies the role of appellate courts undertaking plain error review. To reverse for plain error the reviewing court must (1) identify an error, *id.* at ——, 113 S.Ct. at 1777, (2) which is plain, *id.,* (3) which

---

3. Rule 404(a) has three exceptions, but none applies here.

4. Part of Scott's testimony also prompted Brewer to seek a mistrial. The district court's handling of that issue is taken up below.

affects substantial rights, *id.* at ——, 113 S.Ct. at 1777–78, and (4) which "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 405, 80 L.Ed. 555 (1936)).

█ It's not clear whether the admission of this testimony was proper; we have some doubt whether evidence of an occupation or status like "drug dealer" falls within the realm of "other crimes, wrongs, or acts" admissible to show knowledge or intent under Rule 404(b). *See United States v. Reed,* 647 F.2d 678, 686 (6th Cir.) (Rule 404(b) doesn't justify elicitation of testimony that defendants are known burglars or fences in trial on charges of receiving stolen goods.), *cert. denied,* 454 U.S. 837, 1037, 102 S.Ct. 142, 580, 70 L.Ed.2d 118, 483 (1981). On the surface, at least, it more closely resembles the forbidden character evidence suggested by Brewer.

Law on the latter question remains unsettled, however, *see* Charles A. Wright and Kenneth W. Graham, Jr., 22 Federal Practice and Procedure § 5233 n. 50 and accompanying text (1978 & 1992 Supp.) (identifying the problem), and we needn't address this difficulty, because the claimed error certainly wasn't "plain" by *Olano's* standards. "'[P]lain' is synonymous with 'clear' or, equivalently, 'obvious.' ... At a minimum, the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error *is clear under current law." Olano,* —— U.S. at ——, 113 S.Ct. at 1779 (emphasis added). That's not so here. Accordingly, we find no plain error in the district court's admission of the challenged evidence.

**B**

When Scott denied that Brewer was a drug dealer, then parried the government's attempt to impeach her by denying that she told federal marshals he was, the government called Marshal Flynn to rebut her testimony, and Flynn did. Brewer now argues that the district court erred in failing to instruct the jury that Flynn's testimony was admissible only to impeach Scott and not for its substance.[5] Although Brewer was entitled to such an instruction at trial "upon request," Fed.R.Evid. 105, he didn't make such a request, and again we review for plain error. Fed.R.Crim.P. 30, 52(b).

Applying *Olano's* test for plain error to another case of forfeited rights, it's once again clear that no plain error occurred. While our cases suggest that a limited purpose instruction need be given only upon request, *United States v. Mark,* 943 F.2d 444, 449 (4th Cir.1991); *United States v. Echeverri–Jaramillo,* 777 F.2d 933, 937 (4th Cir.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986), they leave open the possibility that the district court must provide one *sua sponte* in some circumstances. *Id.* (relying on both failure to request *and* nature of evidence admitted in declining to reverse). As the issue remains unsettled, however, Brewer's claim once again founders on the second of *Olano's* requirements, that a legal error be clear at least by the time of appellate review. *Olano,* —— U.S. at ——, 113 S.Ct. at 1779.

**C**

█ Brewer also attacks Detective Dale's testimony at trial regarding the significance of extensive phone traffic between Brewer and members of the alleged drug ring, claiming that Dale wasn't a qualified expert under Fed.R.Evid. 702. Because Brewer timely objected to the admission of this evidence, we review for abuse of discretion. *United States v. Jones,* 913 F.2d 174, 177 (4th Cir. 1990), *cert. denied,* 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 785 (1991). Under the circumstances presented here, we find none.

Fed.R.Evid. 702 provides that

if ... specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

---

5. Brewer also challenges the district court's decision to admit Flynn's testimony at all, but that claim rises and falls with the companion objection to Scott's, since Flynn's testimony was admissible only to impeach Scott with a prior inconsistent statement. Because we've already rejected Brewer's challenge to Scott's testimony, we don't address separately this objection to Flynn's.

qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Among other things, Dale authenticated a collage of evidence seized from Brewer's apartment—including three pagers, a multichannel scanner, copies of nineteen checks from Brewer's checkbook to about eight different cellular telephone and pager companies, a receipt from a cellular provider, and an invoice to install a car phone—and a bevy of cellular phone records for numbers assigned to Brewer, a Rodriguez/Polanco distribution center, and Elvis (sic) Rodriguez. Asked about the significance of the pagers, Dale testified that in a drug operation they permitted distributors to contact their clients and employees and vice versa. Asked about the importance of the cellular phones, he stated that they were used for similar purposes and, unlike regular phones, were very difficult to wiretap. He also testified that most of the people he'd investigated carry cellular phones and pagers. Regarding the cellular phone records, he identified a series of calls proximate in time among the pagers and cellular phones linking Brewer to the Rodriguez/Polanco operation, testifying that the flurry of calls at the time in question likely indicated the staging of a transaction. All this, we think, was "specialized knowledge [that would] assist the trier of fact to understand the evidence or to determine a fact in issue" and not simply an expert's recasting of common knowledge designed to deprive jurors of the exercise of independent judgment.

To have testified properly as an expert, Dale must, of course, have been qualified by "knowledge, skill, experience, training, or education," Fed.R.Evid. 702, to discuss the significance of the phone traffic between cellular phones and beepers involving these suspected narcotics traffickers. He was. Dale testified that he'd worked vice narcotics for seven years, and tactical narcotics before that, participating in over 200 street arrests and investigations. The jury was properly instructed about its freedom to evaluate his qualifications as an expert, and we find no abuse of discretion in the district court's determination that Dale was a qualified ex-

pert witness providing an opinion based on specialized knowledge that would be helpful to the trier of fact.

**D**

Along with their testimony about the eight Virginia transactions with which Brewer was charged, the government's three drug-ring witnesses also provided information concerning a number of transactions with or deliveries to Brewer in the District of Columbia. Brewer unsuccessfully objected to the admission of this evidence based on Rule 404(b), and now assigns the admission of this evidence as error.

While Rule 404(b) forecloses admission of similar acts evidence simply to prove a defendant's bad character, it permits such evidence where necessary to provide the context or *res gestae* of the charged offenses. *United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980). Such was the case here. Brewer's conduct involved a series of related transactions among the same four parties (the three government witnesses and Brewer himself) in both the District of Columbia and Virginia. All three of the government's witnesses delivered cocaine to Brewer in the District at the same time they were delivering to him in Virginia. It would have been difficult for the government to create a coherent story about the relationship between Brewer and the drug ring without some leeway to discuss the District of Columbia transactions as well as the Virginia ones.

The district court must still consider carefully whether the prejudicial impact of the *res gestae* evidence substantially outweighs its probative value, *see* Fed.R.Evid. 403, but we review that balancing exercise deferentially for abuse of discretion. *Masters*, 622 F.2d at 87–88. The prejudicial value of this very cumulative evidence is minimal and gives us no cause to find that the district court acted arbitrarily or irrationally by admitting it. We find no abuse of discretion.

**IV**

At the close of the case, Brewer sought a mistrial based on undue prejudice

stemming from Waquesha Scott's testimony that during her interview with federal marshals they told her Brewer had confessed to dealing drugs. This was tantamount, Brewer claimed, to circumventing his earlier-obtained exclusion of the confession because the government had failed to give him the *Miranda* warning before the questioning during which he confessed. The government opposed Brewer's motion, contending that it hadn't asked a question designed to elicit that response. After hearing both sides, the district court denied the motion.

Brewer challenges that decision here. We review the district court's denial of his mistrial motion for abuse of discretion. *United States v. Thompson*, 744 F.2d 1065, 1068 (4th Cir.1984). The testimony complained of was an unsolicited comment by a witness hostile to the questioner (albeit one also called by that questioner), reemphasized by another nonresponsive outburst on cross-examination by Brewer's own attorney. Brewer's counsel made no objection to or motion to strike the testimony in either case. Nor did he request a curative instruction, despite the district court's offer to provide one if a request was made at the appropriate time. Under these circumstances, the district court didn't abuse its discretion by denying Brewer a mistrial.

## V

■ Finally, Brewer challenges the sufficiency of the evidence used to convict him on Count Six of his indictment, because that evidence showed that he first obtained cocaine from Rodriguez in March or April of 1990, while the indictment alleged that his possession with intent to distribute occurred "[i]n or about February 1990." J.A. at 333. To sustain a conviction the evidence, when viewed in the light most favorable to the government, must be sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir.1982). The question here, however, isn't fact-bound; Brewer simply argues that because the transaction proved occurred two months after the "on or around" date specified in the indictment, his conviction cannot stand.

That's a question of variance. The rule against variance protects defendants by insuring that the indictment provides them with adequate notice to prepare a defense and describes the crime with sufficient particularity to protect them from multiple prosecutions for the same offense. *United States v. De Brouse*, 652 F.2d 383, 389 (4th Cir. 1981). Absent prejudice to one of those interests, variance is harmless error. *Id.*

■ Here Brewer fails to allege prejudice, but such a contention would fail in any event. Proof that a crime occurred reasonably near the date charged in the indictment is sufficient unless time is a material element of the offense or the actual date of the offense implicates the statute of limitations or follows the indictment. *Id.* at 390–91. March or April was reasonably near the "on or about February" date specified in the indictment, time isn't a material element of the possession with intent to distribute offense charged in Count Six, *see e.g., United States v. Sanchez*, 961 F.2d 1169 (5th Cir.) (Elements are (1) knowing (2) possession (3) with intent to distribute.), *cert. denied,* —— U.S. ——, 113 S.Ct. 330, 121 L.Ed.2d 248 (1992), the date of actual occurrence didn't implicate the statute of limitations, *see* 18 U.S.C. § 3282 (statute of limitations is five years), and the transaction in question preceded Brewer's indictment. The evidence was therefore sufficient to convict Brewer on this count, and the district court's entry of a judgment of conviction was proper.

## VI

Because we find no reversible error in the conduct of Brewer's prosecution and trial, each of his convictions is

*AFFIRMED.*

WIDENER, Circuit Judge, dissenting:

I should say that I do not have occasion to disagree with any of the majority's opinion except Part III–A. Because I believe that the error was preserved and that the prosecution attempted to set up its own witness as a straw man whom it could impeach by the use of inadmissible hearsay, I would reverse

the conviction and remand for a new trial. I respectfully dissent.

## I

The majority finds that the defense did not preserve its error because its objection was not clear from the context or otherwise. However, the defense's objections were made each time the prosecution attempted either to question Miss Scott about her hearsay statement to the United States Marshal or to have her comment on whether Brewer was a drug dealer. In fact, the transcript the majority quotes makes clear that the government did not begin by asking her whether Brewer was a drug dealer and then proceed to question her about the statement, but instead began its questioning by asking about what she had told the marshal. Op. at 1434. The prosecutor also knew that Miss Scott would deny that her fiance, Brewer, was drug dealer. This is shown from the fact that the government asked to treat Miss Scott as a hostile witness, which the majority notes in its opinion. Op. at 1434. There is no doubt that the prosecutor wanted the statement admitted, and this was the prosecutor's intent from the outset.

Of relevance both to the merits of this case and as to whether the objection was clear is our decision in *United States v. Morlang*, 531 F.2d 183 (4th Cir.1975), in which we stated that "it has never been the rule that a party may call a witness where his testimony is known to be adverse for the purpose of impeaching him. To so hold would permit the government, in the name of impeachment, to present testimony to the jury by indirection which would not otherwise be admissible." 531 F.2d at 189. We further stated, "Despite the fact that impeachment of one's own witness may be permitted, this does not go so far as to permit the use of the rule as a subterfuge to get to the jury evidence otherwise inadmissible." 531 F.2d at 190. The government engaged in such subterfuge in this case. Miss Scott's testimony was of no value other than the attempt to get into evidence her prior hearsay statement that Brewer's occupation was drug dealing, which as the majority notes, was testimony of doubtful admissibility under Rule 404(b) in the first place. Op. at 1435. The government knew she would deny her statement, which is evident from its asking at the outset for permission to treat her as a hostile witness. Thus, we have exactly the situation in *Morlang*, and I would hold that the error was preserved. The government has known, at least since our decision in 1975, that such tactics are impermissible, and the rule is so well-settled that it can be said without hesitation that the objection was clear from the context.

## II

Because I believe the error was preserved, I also would reach the issue of whether the error was prejudicial to Brewer. I would find that it was prejudicial to admit Marshal Flynn's testimony and reverse for a new trial.[1]

Flynn's testimony about Miss Scott's statement was rank hearsay and should not have been admitted. The fact that the testimony was offered to impeach Miss Scott does not, under the facts of this case, exempt the statement from the usual rule that the prior unsworn statement of a witness cannot be admitted. See *Morlang*, 531 F.2d at 190 (noting, under similar facts, that juries often cannot distinguish between impeachment and substantive evidence and that such evidence therefore should be excluded); see also *Martin v. United States*, 528 F.2d 1157 (4th Cir.1975) (finding that prior statements used for impeachment purposes may not be used as substantive evidence).

The substance of the impeaching testimony was that Miss Scott had told the marshal that Brewer was a drug dealer. It clearly

---

1. The majority does not address this point because it found that Brewer had not preserved his objection to the use of Miss Scott as a straw man through whom it could bring in the impeaching hearsay. See op. at 1435 n. 5. However, my views on this point are not a comment on the majority's view in Part III–B that Brewer may

have been entitled to a limiting instruction only if he asked for it or if the failure to give the instruction amounted to plain error. Op. at 1435. It was the admission of the testimony that gave rise to the error in the first place, so I would not reach the limiting instruction issue.

was offered to prove the truth of the matter asserted, and as such, may only create the impression that the government's charges must, of course, be correct. Cf. Fed.R.Evid. 404(b) (prohibiting character evidence used to show that accused acted in conformity therewith on occasion in question). I see no reason to distinguish the impeachment evidence offered here from the evidence offered in *Morlang*. In *Morlang* the witness had given a statement to one Raymond Crist that implicated the defendant in the crime being tried, but he denied the defendant's involvement in interviews with the government and on the witness stand. The government apparently knew he would deny the defendant's involvement on the stand and had Crist standing ready to offer the impeaching statement. Even though the jury was given a limiting instruction, we reversed, based upon the government's apparent subterfuge in calling the first witness solely for the purpose of having the witness's otherwise inadmissible statement admitted as impeachment evidence. In finding that the statement was damaging, we reasoned: "To permit the government in this case to supply testimony which was a naked conclusion as to [the defendant's] guilt in the name of impeachment would be tantamount to permitting the use of hearsay and would seriously undermine the important policies underlying Justice Douglas' opinion in *Bridges [v. Wixon*, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945) ]." [2] 531 F.2d at 190.

I would find that Flynn's testimony about Miss Scott's prior statement was just as damaging to Brewer as Crist's was to the defendant in *Morlang*. Although Miss Scott's statement may not have expressly referred to the guilt of Brewer in the particular drug transactions with which Brewer was charged, the jury obviously would have believed that if his fiancee said he was a drug dealer, it must be so. This adds the additional concern that he was being convicted of being a drug dealer without regard to wheth-

er he committed the offenses charged. I think there is ample prejudice here.

### III

The government simply should not be allowed to employ tactics of overkill that fly in the face of direct circuit precedent that has been established for more than fifteen years. Accordingly, I would reverse and remand for a new trial.

---

**2.** In *Morlang* we relied upon the *Bridges* decision in weighing the value to the truth-finding process of impeachment testimony that is hearsay. We reasoned that although witnesses occasionally may not testify as counsel had expected, which leads to the desire to have the jury consider prior statements, the principle that an accused should not be convicted on the basis of an unsworn statement outweighs the value which any hearsay impeachment testimony might have. *Morlang*, 531 F.2d at 190.