**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                       No. 96-4049

HOBART JUNIOR CROTTS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                       No. 96-4050

SANDRA ESSARY CROTTS,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., District Judge.
(CR-95-112)

Argued: December 6, 1996

Decided: January 7, 1997

Before HALL, ERVIN, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Thomas Lambeth, Jr., HEMRIE, LAMBETH &
CHAMPION, P.A., Burlington, North Carolina, for Appellant Hobart

Crotts; Anne Rebecca Littlejohn, Greensboro, North Carolina, for Appellant Sandra Crotts. Scott Patrick Mebane, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Hobart and Sandra Crotts, husband and wife, were convicted (after a jury trial) of conspiracy to possess with the intent to distribute marijuana, see 21 U.S.C. §§ 846 and 841(b)(1)(A), and of the attempt to possess with the intent to distribute marijuana, see 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. The district court sentenced Hobart Crotts to 360 months imprisonment, 10 years of supervised release, and a $100 special assessment. Sandra Crotts was sentenced to 121 months imprisonment, 5 years of supervised release, and $100 special assessment. Both appeal their convictions and sentences, claiming that the evidence against them was insufficient and that the district court miscalculated the amount of marijuana attributable to them for purposes of sentencing. Sandra Crotts also claims that the district court erred when it increased her offense level by two for obstruction of justice under § 3C1.1 of the sentencing guidelines. Finding no error, we affirm the convictions and sentences.

I.

The evidence, viewed in the light most favorable to the government, see United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993), established the following.

Hobart Crotts was the leader of a rather large ring that brought marijuana from Texas for sale in Davidson County, North Carolina.

2

The government offered testimony against the Crottses from two of Hobart's chief lieutenants (Smith and Walser) and from Mark Johnson, who bought marijuana from Hobart.

Smith testified that sometime in 1990 or 1991 he and Hobart Crotts made several trips to Texas to buy marijuana. On at least one of those trips Sandra Crotts accompanied them and carried Hobart's money. While in Texas they met with several marijuana dealers, and Smith and Sandra tested some of the marijuana. In the fall of 1993 Smith assumed the role of administrator for Hobart. Smith then helped Hobart coordinate transportation and distribution of the marijuana. According to Smith, customers would pay Hobart directly at the Crottses' house where Hobart, in turn, gave the money to Sandra to hide outside.

Smith and Hobart had a falling out around mid-1994, and Walser assumed Smith's duties. Walser testified that loads of marijuana weighing from 50 to 460 pounds came from Texas about every three to four weeks. Walser, working with Hobart, would distribute the product. Walser also confirmed that most customers would pay Hobart directly at the Crottses' house, and Hobart would then give the money to Sandra to take outside. In March 1995 Walser agreed to cooperate with law enforcement after he was arrested for distributing marijuana. Walser and an undercover agent went to Texas to acquire marijuana for Hobart. Walser's source agreed to front him 118 pounds, and Walser arranged for the drugs to be shipped to North Carolina. After Walser returned to North Carolina, he and Hobart discussed who would pick up the shipment. At Hobart's suggestion, Lester Bass met the shipment. Officers arrested Bass once he picked up the drugs. Hobart and Sandra Crotts were arrested soon thereafter.

II.

The Crottses first contend that there was insufficient evidence to establish their guilt beyond a reasonable doubt. According to them, the testimony of the government witnesses was so inconsistent that there was no reliable basis upon which the jury could have rested its verdict. The inconsistencies the Crottses mention deal mainly with differences between the witnesses' trial testimony and their statements to agents before trial and with variations about the amount of

3

drugs involved. The following examples are illustrative. Walser admitted at trial that he had lied to authorities in the past about some aspects of his own involvement in drug trafficking. Smith admitted on cross-examination that he had previously lied to agents about who transported one batch of marijuana from Texas to North Carolina. And, Walser testified that the first time he picked up marijuana from Smith (when Smith was Hobart's chief lieutenant) he got 50 pounds, while Smith testified that it was 40 pounds.

The defense lawyers, through cross-examination and argument, took full advantage of their opportunity to educate the jury about the prior inconsistent statements (or lies) and the inconsistent testimony among witnesses. In the end, however, it was for the jury to determine the credibility and weight of the testimony challenged by the Crottses. See United States v. Lopez-Hernandez, 418 F.2d 1243, 1244 (9th Cir. 1969) (noting that record revealed inconsistencies in testimony of prosecution's witnesses but that credibility of witnesses and weight to be given their testimony were matters for jury). Moreover, the factual inconsistencies about drug amounts do not go to the fundamental question: whether the Crottses were involved in drug conspiracy and attempt crimes. In light of the testimony we recount in part I, supra, we are satisfied that there was substantial evidence for the jury to find beyond a reasonable doubt that the Crottses were involved in the drug conspiracy and in the attempt to possess with intent to distribute. See Glasser v. United States, 315 U.S. 60, 80 (1942).

III.

Both Hobart and Sandra Crotts assert that the district court erred when it determined the amount of marijuana attributable to them under U.S.S.G. § 2D1.1(c). For Hobart the district court adopted the calculations in the presentence report. Hobart argues that the testimony upon which the probation officer relied in making the report was inconsistent (and unreliable) and that the district court therefore erred in adopting the report's calculations. He contends that his case should be remanded for re-sentencing with the instruction to set his offense level at 30.

Hobart's argument is essentially moot. The district court found Hobart to be a career offender under U.S.S.G. § 4B1.1. As a result,

4

Hobart's offense level was raised to 37. This level would not be reducible unless the amount of marijuana attributable to him was less than 1,000 kilograms. Even taking the inconsistencies in the drug quantity testimony in a light that favors Hobart, the evidence supports attributing at least 1,000 kilograms to him. Consequently, the district court's determination that Hobart's offense level should be 37 was not in error.

The district court held Sandra responsible for 1,197 kilograms of marijuana, which translates into an offense level of 32. Sandra's argument is similar to Hobart's. She contends that the witnesses gave varied accounts of the amount of marijuana involved, making the district court's calculation faulty. Again, although the testimony was inconsistent in some respects, virtually every witness who testified spoke in terms of large quantities of marijuana -- quantities totalling more than 1,197 kilograms. Given Sandra's involvement and participation with Hobart, we cannot say that the district court clearly erred in its calculation of the amount of drugs attributable to her.

IV.

Sandra Crotts contends that the district court erred when it increased her offense level by two for obstruction of justice. See U.S.S.G. § 3C1.1. The district court increased her offense level because it found that when she testified at trial, she willfully made false material statements for the purpose of misleading the jury.

In United States v. Dunnigan, 507 U.S. 87, 95-96 (1993), the Supreme Court said that sentence enhancement pursuant to U.S.S.G. § 3C1.1 is appropriate when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." The Court added that when a "defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice. . . ." Id. at 95.

The district court made the requisite findings under Dunnigan. It took an overnight recess during Sandra's sentencing to give her law-

5

yer the opportunity to address the statements that the probation officer and the government said constituted perjury. Once the sentencing hearing resumed, the district court read line-by-line the government witness testimony which directly conflicted with Sandra's testimony and which demonstrated that her testimony was false. The district court proceeded carefully and did not err when it increased Sandra's offense level by two for obstruction of justice.

V.

The convictions and sentences of both Hobart Crotts and Sandra Crotts are affirmed.

AFFIRMED

6