Yoshitaro K. TANAKA, Plaintiff,

v.

FIRST HAWAIIAN BANK,
et al., Defendants.

No. Civ. 96–00734SPK.

United States District Court,
D. Hawai'i.

July 11, 2000.

Gregory Tom, Watanabe Ing & Kawashima, Honolulu, HI, for defendant, third-party plaintiff.

Sidney Ayabe, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, for defendant, fourth-party defendant.

Randolph Slaton, Honolulu, HI, for third-party defendant and fourth-party plaintiff.

## ORDER DENYING MOTIONS FOR PARTIAL SUMMARY JUDGMENT

SAMUEL P. KING, District Judge.

### INTRODUCTION

This is a factually and legally complicated case. The motions before the Court involve tricky and evolving concepts regarding, among other things, accrual of federal civil RICO claims. Defendant Roy Kodani, joined by Defendant First Hawaiian Bank, filed (1) a Motion for Partial Summary Judgment (on the RICO Count of the First Amended Complaint) and (2) a Motion for Summary Judgment against Fourth–Party Plaintiff Micki Ikuko Date (on Date's malpractice Count). After the matters were argued, two sets of supplemental briefs were filed. For the reasons set forth, the Motions are DENIED. This Order, however, details specific threshold questions of fact regarding application of statutes of limitation.

### BACKGROUND

This civil RICO and fraud case stems from a dispute over the estate of the late Yoshio Tanaka, who died in 1987. Yoshio Tanaka's son, Yoshitaro, filed this action on September 4, 1996, against First Hawaiian Bank ("FHB") and attorneys Roy Kodani and Koji Takeuchi. Takeuchi was defaulted earlier. Among other things, Yoshitaro's suit alleges federal civil RICO violations and legal malpractice. In turn, FHB filed a third-party complaint against Yoshio Tanaka's ex-wife Micki Ikuko Date, who is Yoshitaro's mother. Date then

Gerald Brooks, Honolulu, HI, for plaintiff.

filed affirmative claims against FHB and Kodani on March 7, 1997. Thus, Kodani faces claims from Yoshitaro (on the original complaint) and Date (on the 4th–party complaint). Similarly, FHB faces claims from Yoshitaro (on the original complaint) and Date (on counterclaims to FHB's third-party complaint).

The Court will sometimes refer to Yoshitaro Tanaka (the plaintiff) and Date (counter–claimant/4th–party plaintiff) collectively as "Plaintiffs" because they are aligned in interests. Similarly, the Court will sometimes refer to Kodani and FHB collectively as "Defendants." To avoid confusion with his father, the Court will refer to Plaintiff as "Yoshitaro" and his father as "Tanaka." Yoshitaro and Date have filed as co-plaintiffs a parallel action, *Tanaka v. Tokyu Dentetsu Kabushiki Kaisya, et al.*, Civ. No. 97–1589DAE ("the TKK litigation"), which is currently pending before Chief Judge David Alan Ezra.

### DISCUSSION

Kodani has filed two statute-of-limitations motions: One against Yoshitaro's RICO and professional malpractice claims, and one against Date's 4th–party claims. FHB has substantively joined Kodani's motion as to Yoshitaro's RICO claims.

I. *The first Motion—Yoshitaro's RICO claims*

■ The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, among other things, provides a civil cause of action for "any person injured in his business or property by reason of a violation" of RICO's criminal provisions. *See* 18 U.S.C. § 1964(c). RICO also provides a conspiracy cause of action. *See* 18 U.S.C. § 1962(d) ("It shall be unlawful for any person to conspire to violate any of the provision of subsection (a), (b), or (c) of [§ 1962]"). Overt acts for such conspiracy claims must be "act[s] of racketeering or otherwise wrongful under RICO." *Beck v. Prupis*, —— U.S. ——, ——, 120 S.Ct. 1608, 1616, 146 L.Ed.2d 561 (2000). Despite their complexity, the possibility of treble damages and attorneys

fees under section 1964(c) sometimes makes pursuing RICO claims worth the difficulty.

■■ A civil RICO claim requires (1) conduct (2) of an "enterprise" (3) through a "pattern" (4) of racketeering activity (or "predicate acts") (5) causing injury to the plaintiff's "business or property." *See, e.g., Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996) (citations omitted). A "pattern" for RICO purposes requires "at least two acts of racketeering activity … the last of which occurred within ten years … after a prior act of racketeering activity." 18 U.S.C. § 1961(5). RICO's "predicate acts" or "racketeering activity" include violations of certain federal statutes, many of which prohibit various types of fraud. *See* 18 U.S.C. § 1962.

■ In the absence of a statutory limitations period, the Supreme Court has determined by case law that a four-year limitations period applies to civil RICO actions. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). However, it has not as yet fully defined when such actions accrue. The instant motions raise accrual issues.

A. **The law regarding accrual of RICO claims.**

Before 1997, the circuits had followed at least three different general accrual rules. The Third Circuit followed a "last predicate act" rule, under which a claim would run from when the plaintiff "knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity." *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1130 (3d Cir.1988). Under this rule, if a complaint was filed within four years of the last predicate act, a plaintiff could still recover for injuries caused by other predicate acts which occurred outside the limitations period.

Some circuits followed an "injury and pattern discovery" rule, under which the

limitations period would not begin to run until a plaintiff discovered both (1) the injury *and* (2) that the injury was part of a pattern of RICO activity. *See, e.g., Association of Commonwealth Claimants v. Moylan,* 71 F.3d 1398, 1402 (8th Cir.1995).

Most circuits (including the Ninth), however, followed some form of an "injury discovery" rule. *See, e.g., Grimmett,* 75 F.3d at 511. Under this rule, the limitations period begins to run upon discovery of *only* the injury. "[A] civil RICO cause of action arises when the plaintiff knows or should know that she has been injured." *Id.* at 512. That is, even if a plaintiff did not know the injury was caused by a pattern of RICO activity, a claim would still accrue and the statute of limitations would still run.

Another rule—what appears to be a subset of the "injury discovery" rule—is a "separate accrual" rule, under which the commission of "new and separate" predicate acts within the four-year period permit a plaintiff to recover the additional damages caused by those acts. *See Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 190, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (discussing but not specifically adopting a separate accrual rule). Although the Supreme Court has not explicitly adopted a separate accrual rule, several circuits including the Ninth have. *See Grimmett,* 75 F.3d at 512–14 (allowing recovery if "new and independent" acts inflict "new" injury). The separate accrual rule generally applies in the context of a multiple-injury case. *See, e.g., Bingham v. Zolt,* 66 F.3d 553 (2d Cir.1995) (applying separate accrual rule in RICO matter against an attorney and accountant found liable for funneling money out of a deceased person's estate, if "separate and independent" injuries continue to flow from underlying RICO violations). That is, "new and independent" acts causing "separate and independent" injuries accrue anew. Even under this separate accrual rule, however, the Supreme Court has explained that "the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier

predicate acts that took place outside the limitations period." *Klehr,* 521 U.S. at 190, 117 S.Ct. 1984 (citations omitted).

In 1997, the Supreme Court in *Klehr* cut the possible accrual rules by one. It rejected the Third Circuit's "last predicate act" approach; accrual is *not* delayed until after the last predicate act of a pattern of RICO activity. *See id.* at 187–92, 117 S.Ct. 1984. The Court explained that "[b]ecause a series of predicate acts (including acts occurring at up to 10–year intervals) can continue indefinitely, such an interpretation, in principle, lengthens the limitations period dramatically." *Id.* at 187, 117 S.Ct. 1984. The Court discredited the idea that, as long as a defendant committed one predicate act within the four-year limitations period preceding suit, a plaintiff could recover not only for added harm caused by the latest predicate act but also for all harm caused by the entire pattern of RICO activity. *See id.* at 186–87 & 190, 117 S.Ct. 1984. The Court, however, did not decide upon a final rule. It specifically left open whether RICO claims accrue (1) when an injury *and* pattern is discovered, (2) when only the injury is discovered, or (3) some other time such as when the injury occurs (even absent discovery), which is the case under the Clayton Act. *See id.* at 198, 117 S.Ct. 1984 (Scalia, J., concurring).

This term, after the oral argument was held on the instant motions, the Supreme Court cut the possible accrual rules by one more. *See Rotella v. Wood,* — U.S. —, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). The Court again did not specifically articulate a definitive rule. Rather, the Court eliminated the "injury and pattern discovery" accrual rule, recognizing that such a rule "would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete." *Id.* at 1082. The Court left undecided whether the ultimate rule would be an "injury discovery" rule or a pure "injury occurrence" rule because such a decision was not necessary to re-

solve the case. *See id.* at 1080 n. 2. Nor did the Court need to decide whether a "separate accrual" rule would be inconsistent with RICO's purposes in multiple-injury cases. *See id.* at 1082 n. 4.

Thus, as the law stands today, some form of an "injury discovery" rule has not been eliminated by the Supreme Court. *Grimmett* (as clarified by *Rotella* and *Klehr*) is good law in the Ninth Circuit. The Supreme Court's post-*Grimmett* opinions in *Rotella* and *Klehr* both contain language and reasoning that is useful in interpreting and applying *Grimmett.* This Court will apply an "injury discovery" rule and, more specifically, a "separate accrual" injury discovery rule to the extent there is multiple injury.

█ Significantly, RICO's limitations period is subject to equitable estoppel or equitable tolling under the doctrine of fraudulent concealment, if a plaintiff has exercised "due diligence" in investigating claims. *See Rotella,* ── U.S. at ──, 120 S.Ct. at 1084; *Klehr,* 521 U.S. at 193–95, 117 S.Ct. 1984.

### B. Are the RICO claims barred?

Plaintiffs generally allege that Kodani and FHB cooperated in wrongfully probating a revoked will, collaborated in forging trust and corporate or partnership documents, breached fiduciary duties, and masterminded or otherwise participated in a pattern of fraudulent activity in the late–1980's and early–1990's. In general, these acts allegedly deprived Plaintiff Yoshitaro of property, money, and interests in Emerald Management Company entities (all from Tanaka's estate), contrary to Tanaka's wishes. Tanaka had sought to leave substantial assets to Yoshitaro by way of intestate laws of various jurisdictions and

by various pre-death transfers. Although the revoked will did leave property or money to Yoshitaro, Tanaka's estate was left without sufficient resources to fund those bequests to Plaintiff, apparently (although the details are not particularly clear) because of the probating of the will and other predicate acts. Plaintiff was effectively disinherited.

The alleged wrongful probate of the revoked will occurred in October of 1987. Plaintiffs' own allegations admit that Date knew (and thus, so Defendants assert, Plaintiff Yoshitaro constructively knew) or suspected before December of 1987 that the revoked will was wrongfully probated. *See* First Amended Complaint at ¶ 42. Defendants also point to an October 5, 1989, letter wherein Date asked a Tennessee lawyer to investigate the propriety of certain of Kodani's actions. She apparently knew of or suspected some type of wrongdoing or fraud in 1989, if not earlier. Logically, she could have or should have known of Yoshitaro's "injury" (disinheritance) at that time.

█ The initial complaint in this action was filed on September 10, 1996, some 9 years after Date evidently knew or suspected that the probate was wrongful and first knew or suspected that Defendants were breaching fiduciary duties. The initial complaint was also filed over 4 years and 7 months after Yoshitaro reached the age of majority. (He turned eighteen on February 14, 1992.) Unless the limitations period did not accrue in 1987, or unless it was tolled, the RICO claims are barred.[1]

Defendants assert that Date's knowledge, whether of "RICO injury" or of fraud, is imputed to Yoshitaro because Date was Yoshitaro's legal guardian. De-

---

1. In this regard, under Haw.Rev.Stat. 657–13, statutes of limitation as to Yoshitaro's causes of action are tolled due to infancy. Section 657–13 provides in pertinent part:

 If any person entitled to bring any action specified in this part ... is, at the time the cause of action accrued ... [w]ithin the age of eighteen years ... such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.

 Assuming a civil RICO claim is covered by this section, this alone does not save Yoshitaro's RICO claims. Even if tolled for infancy such claims would still be some 7 months late because he turned 18 in February of 1992.

fendants thus contend that Yoshitaro's RICO claims are barred by the 4–year statute of limitations, regardless of tolling for infancy and regardless of whether the RICO claims accrued in December of 1987 or in February of 1992. Either way, so Defendants claim, Yoshitaro's RICO claims are barred.

■ Hawaii appellate courts have not specifically decided whether a parent's knowledge of a cause of action is imputed to a child. The majority rule—which this Court will follow here—is that a parent's knowledge of a cause of action is *not* imputed to minor children.[2] *See, e.g., Duncan v. Leeds,* 742 F.2d 989, 993 (6th Cir. 1984) ("in light of Tennessee law that the negligence of a parent is not imputed to the child, we hold that Tennessee would not impute the knowledge or constructive knowledge of a parent concerning the existence of a child's cause of action to the child") (Tennessee law); *Young v. Key Pharmaceuticals,* 112 Wash.2d 216, 770 P.2d 182, 186 (1989) (en banc) ("the rule that we follow is the majority rule in this country"); *Ohler v. Tacoma General Hospital,* 92 Wash.2d 507, 598 P.2d 1358, 1361 (1979) ("If the negligence of a parent is not imputed to a child ... knowledge of the parent about a possible cause of action should not be imputed to the child, at least absent communication to the child") (en banc) (superceded by statute on other grounds); *Luchini v. Harsany,* 98 Or.App. 217, 779 P.2d 1053, 1054–55 (1989) (stating majority rule that appointment of a guardian does not remove statutory tolling for minors); *O'Brien v. Massachusetts Bay Transportation Authority,* 405 Mass. 439, 541 N.E.2d 334, 337 (1989) (same). As in those jurisdictions, Hawaii does not impute the negligence of a parent to a child. *See, e.g., Carpenter v. Honolulu Rapid Transit Co.,* 35 Haw. 761 (1940). Thus, the Court concludes that Date's pre-filing knowledge—whatever it was—is not imputed to Yoshitaro. This ruling accords with the

general principle for courts to be zealous in protecting the rights of minors. *See Leslie v. Estate of Tavares,* 91 Hawai'i 394, 402, 984 P.2d 1220, 1228 (1999).

■ The question therefore is when did Yoshitaro—not Date—discover (or when should he have discovered) that he was injured. *See Grimmett,* 75 F.3d at 512 ("a civil RICO cause of action arises when the plaintiff knows or should know that [he] has been injured"). If Yoshitaro personally knew or should have known of his injury anytime after he turned 18 but before the four years prior to filing suit (that is, in the 7 months after he turned 18), then the RICO claims are barred absent equitable tolling. This begs another question: What was his "injury?" At the most general level, Yoshitaro's "injury" is being disinherited. When did he know, or when should he have known, that he was deprived of what he was supposed to have gotten from his father's estate?

■ Yoshitaro's knowledge is a material question of fact. *See, e.g., Levin–Richmond Terminal Corporation v. International Longshoremen's and Warehousemen's Union,* 751 F.Supp. 1373, 1376 (N.D.Cal.1990) ("Disputed questions of fact and law remain ... with respect to when plaintiff's RICO action accrued"); *Reeder v. Kermit Johnson, Alphagraphics, Inc.,* 723 F.Supp. 1428, 1438–39 (D.Utah 1989) (reasoning that when plaintiff knew or should have known of RICO injury for purposes of separate accrual discovery rule was a question of fact); *Tucker v. Baxter Healthcare Corp.,* 158 F.3d 1046, 1050 (9th Cir.1998) (concluding in non-RICO case that where genuine issues of material fact exist as to when statute of limitations began to run, summary judgment was inappropriate); *Ward v. Westinghouse Canada, Inc.,* 32 F.3d 1405 (9th Cir.1994) (same); *Dunlea v. Dappen,* 83 Hawai'i 28, 33, 924 P.2d 196, 201 (1996) (holding that issue of when plaintiff discov-

---

2. Yoshitaro apparently lived with Date in Tennessee during much of his infancy. The Court, however, need not decide whether Ten-

nessee law or Hawaii law applies to the question of imputation. The result would be the same either way.

ered, or reasonably should have discovered, that plaintiff was injured is a question of fact for the jury).

In this regard, the record is curiously void of a declaration or deposition testimony of Yoshitaro. Defendants presumably would have the burden of proof on this issue. There is some indication that Yoshitaro had some inquiry knowledge of injury in November of 1994. On November 7, 1994, Yoshitaro signed a letter (along with Date) to Kodani, asking for "all of the documents and files in connection with the estate of Yoshio Tanaka" and authorizing attorney Eric Kawatani to assist them in obtaining documents from Kodani. *See* Exhibit 10 of Plaintiff's Opposition to Kodani's Motion. There is currently no evidence, however, that he actually knew of his injury during the critical period in 1992 (the 7 months after he turned 18). When briefing and arguing the current motions, the parties did not focus specifically on Yoshitaro's knowledge.

Moreover, the question of what was Yoshitaro's "injury" also raises other relevant questions regarding his knowledge. For example, the question of when Yoshitaro knew he was *deprived* of his rights and benefits from the Estate necessarily raises the question of when he knew what he was supposed to have gotten in the first place. These are threshold questions of fact.

The focus is on the *"injury,"* not on the predicate acts and not on the fraud. The question is not whether or when Yoshitaro knew of particular fraudulent acts. Plaintiffs emphasize—incorrectly—that under the Ninth Circuit's formulation of the "injury discovery rule" the focus is on the fraud. Yoshitaro fervently argues that the Ninth Circuit's "injury discovery" rule requires "discovery of the fraud" or discovery that the injury was caused by fraud.

In support, he cites to *Grimmett* and its corresponding citations to previous Ninth Circuit opinions. In *Grimmett,* the Ninth Circuit stated that "we have faithfully followed the 'injury discovery' rule for over a decade." 75 F.3d at 511. *Grimmett* then string-cites to several cases for this proposition. In particular, Plaintiff makes much of *Grimmett*'s citation to *Beneficial Standard Life Ins. Co. v. Madariaga,* 851 F.2d 271, 275 (9th Cir.1988) and *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1415 (9th Cir.1987).

In *Madariaga,* the Ninth Circuit did indeed state that a civil RICO claim accrues "when [the plaintiff has] actual or constructive knowledge *of the fraud."* 851 F.2d at 275 (emphasis added); *see also Volk,* 816 F.2d at 1415. Plaintiff argues that he (and Date) did not discover the fraud until 1996 and asserts that, under *Madariaga,* his civil RICO claims did not accrue until shortly before filing suit.

Plaintiff's position essentially is that civil RICO claims do not accrue unless and until the "injury" *and* some connection to fraud or a predicate act is discovered (whether or not the plaintiff knew that there was a *pattern* of RICO activity).[3] Only then would a plaintiff know that he has suffered a "RICO injury" or "the injury which is the basis for the action." *Volk,* 816 F.2d at 1415. Plaintiff would define "injury" for purposes of accrual of civil RICO claims as including some knowledge of underlying fraud.

Plaintiff's reading of *Madariaga* and *Volk,* however, cannot square with the Supreme Court's post-*Grimmett* opinions in *Klehr* and *Rotella.* As set forth earlier, *Klehr* eliminated the "last predicate act" rule and *Rotella* eliminated the "pattern discovery" rule. The Supreme Court left

---

**3.** For example, counsel argued as follows during oral argument:

THE COURT: [*Grimmett*] says the plaintiff need not discover that the injury is part of a pattern of racketeering for the period to begin to run.

MR BROOKS: I understand that, Your Honor. But what I'm saying is even one racke-

teering act, even one predicate act wasn't discoverable. That's the issue. It's not whether you can see the whole array of the land.

Transcript of Proceedings of February 11, 2000, at 50.

open "some form" of an injury discovery rule. *Rotella,* ―― U.S. at ――, 120 S.Ct. at 1080. The Court reasoned that, among other things, federal courts generally apply a discovery accrual rule when a statute is silent. *See id.* at 1081. It emphasized that "in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, *not discovery of the other elements of a claim,* is what starts the clock." *Id.* (emphasis added). It also rejected an argument that the connection between civil RICO and fraud makes any difference. *See id.* at 1082. Further, the Supreme Court has long held that civil RICO claims do not require a distinct "RICO injury." *See Sedima v. Imrex Company, Inc.,* 473 U.S. 479, 495, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

Moreover, Yoshitaro's reliance on language from *Madariaga* is undercut by a later Fourth Circuit case directly on point. In *Detrick v. Panalpina, Incorporated,* 108 F.3d 529, 538 (4th Cir.1997), the Fourth Circuit rejected the very position that Yoshitaro espouses here. In *Detrick,* the plaintiffs argued the following in urging application of a "knowledge-based" injury discovery rule:

> it is not mere economic loss which marks the accrual of a RICO cause of action, but knowledge of facts and circumstances sufficient to put the plaintiff on inquiry notice and demonstrate some reasonable correlation between the loss and the RICO cause of action—only this connection signifies 'injury that underlies the cause of action.'

*Id.* at 538 (quoting plaintiffs' brief) (editorial marks omitted). This is essentially the same argument that Yoshitaro makes here. Likewise, the *Detrick* plaintiffs cited as support *Madariaga* and its language about "actual or constructive knowledge of the fraud." *Id.*

The Fourth Circuit disagreed. In rejecting the plaintiffs' logic, the Fourth Circuit declined to follow *Madariaga,* reasoning that *Madariaga*'s approach "is more akin to the circuits that require that the plaintiff know both of his injury and the pattern of racketeering which serve as a basis for his RICO action." *Id. Detrick* thus recognized that *Madariaga* and its language "knowledge of the fraud" was actually a form of the "pattern discovery" rule, which the Supreme Court recently rejected in *Rotella.*

Accordingly, given *Detrick* and *Rotella,* this Court will not follow Plaintiff's interpretation of *Madariaga. Rotella* extinguished any spark that *Grimmett* breathed into Plaintiff's reading of *Madariaga. Rotella* made clear that a civil RICO cause of action accrues "when a plaintiff knew or should have known of his injury," ―― U.S. at ――, 120 S.Ct. at 1080, and not when a plaintiff discovers "other elements of a claim." *Id.* at 1081. A plaintiff need not learn of any RICO connection. *See, e.g., McCool v. Strata Oil Company,* 972 F.2d 1452, 1464–65 (7th Cir.1992) (discussing "injury discovery" rule and recognizing the distinction between discovery of an injury and discovery of a cause of action). If "discovery of the fraud" were truly a necessary part of the analysis it would "extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete." *Id.* at 1082.

Thus, *Madariaga* and *Volk* do not help Yoshitaro. The RICO claim accrued when he knew or should have known of his injury. Nevertheless, as discussed earlier, that is presently a disputed question of material fact.

### C. Application of the "separate accrual" rule.

If a fact-finder concludes that Yoshitaro did not discover and should not have discovered his injury outside the limitations period (4 years before filing suit), then the case can proceed to the merits. If, however, Yoshitaro *did* know, or should have known, of his injury in the 7 months following his 18th birthday, some of his RICO action might still survive under the "separate accrual rule." Under this rule, Yoshitaro could still obtain RICO recovery

for injuries arising during the limitations period. He could recover some damages if "new and independent" overt acts occurred during the limitations period and caused "separately accruing" injury. *See, e.g., Grimmett,* 75 F.3d at 512–13. "A corollary rule is that damages may not be recovered for injuries sustained as a result of acts committed outside the limitations period." *Id.* at 512 (citing *State Farm Mut. Auto. Ins. Co. v. Ammann,* 828 F.2d 4, 5 (9th Cir.1987) (Kennedy, concurring)).

Initially, Kodani argues that the separate accrual rule cannot apply because Yoshitaro's complaint (and corresponding RICO case statement) details a "continuous pattern of racketeering activity." A "continuous pattern," so the logic goes, cannot at the same time consist of "separate and independent" acts.

■ This argument fails, however, because every properly-pled RICO claim necessarily "must allege that all of the predicate acts, taken together constitute a single course of conduct aimed at benefitting the wrongdoer by harming [plaintiff]." *Monterey Plaza v. Local 483,* 215 F.3d 923, 927 (9th Cir. 2000) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 & n. 14, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Properly-pled RICO claims require "continuity." *See generally Howard v. America Online Inc.,* 208 F.3d 741, 750 (9th Cir.2000). The exception would swallow the rule. Rather, the difficult question is whether separate overt acts (not necessarily a new *pattern* of predicate acts) caused new and independent injury.

Applying the separate accrual rule is not easy. The inquiry requires determining whether the predicate acts are indeed "new and independent" and ascertaining whether the plaintiff's "injury" is "separate." As *Grimmett* observed, few Ninth Circuit cases offer guidance for applying this separate accrual rule. *See Grimmett,* 75 F.3d at 513. *See also Bingham v. Zolt,* 66 F.3d 553, 559–62 (2d Cir.1995); *In re Merrill Lynch Limited Partnerships Litigation,* 154 F.3d 56, 59 (2d Cir.1998). The analysis, however, must begin with the

alleged injury because "non-independent injury will not cause a new limitations period to accrue." *Bingham,* 66 F.3d at 560.

While at the broadest level Plaintiff's "injury" was losing his inheritance, things may not be so simple. According to Plaintiff's RICO case statement, his "injury" to his "business and property" was as follows:

a. Plaintiff's interest in [Emerald Management Company] was injured due to the acts of Defendants [FHB] and KODANI. (Complaint, pages 27–30, ¶¶ 83–90).

b. Plaintiff's interest in [Emerald Liquidating Trust] was injured due to the acts of Defendants [FHB] and KODANI. (Complaint, pages 30–31, ¶¶ 91–95).

c. Plaintiff's interest in the Texas pecan farm, including rents and profits therefrom, was injured due to the acts of Defendants [FHB] and KODANI. (Complaint, page 32, ¶¶ 96–98).

d. Plaintiff's interest in the California orange grove, including rents and profits therefrom, was injured due to the acts of Defendants [FHB] and KODANI. (Complaint, page 32, ¶¶ 99–102).

e. Plaintiff's interest in proceeds from real properties [in] Hawaii and Japan intended for Plaintiff and other assets was injured by transfer of money from the Estate due to the administration of the revoked Will, (Complaint, pages 11–18, ¶¶ 11–55); administration of the forged Trust (Complaint, pages 9–11, ¶¶ 27–32); and administration of a coerced Guardianship (Complaint, pages 18–23, ¶¶ 56–70). These acts and others injured the Estate and Plaintiff, the sole heir of Decedent, by depriving him of the property and income through intestate succession.

Plaintiff's RICO Case Statement, October 7, 1996, at 31–32.

Similarly, Plaintiff lists his damages as:

a. Decline in value of the limited partnership share in [Emerald Management

Company] in an amount of at least $6,000,000.

b. Damages associated with the decline in the beneficial interest in [Emerald Liquidating Trust] in excess of $500,000.

c. $300,000 taken by Defendant [FHB] from [Mitsubishi Bank of California] to pay probate expenses and cash distributions to others.

d. Cash removed from the Estate in Japan and the sale of real properties intended for Plaintiff, in the amount of at least $1,000,000.

e. The decline in value, and the loss of substantial crop proceeds or interest from a timely sale, of the Texas pecan farm, and associated expenses, in the amount of at least $300,000.

f. The decline in value, and the loss of substantial crop proceeds or interest from a timely sale, of the California orange grove, and associated expenses, in the amount of at least $300,000.

g. Loss from sale of properties in Hawaii intended for Plaintiff, in the amount of at least $200,000.

h. Cash distributions made to others under the purported Will, in excess of $300,000.

[i.] Fees paid to Defendants and their affiliates, in excess of $200,000.

j. Attorneys fees expended by Plaintiff in an amount to be proven at trial.

k. Plaintiff's emotional injury in an amount to be proven at trial.

l. Punitive damages in an amount to be proven at trial.

*Id.* at 33–34.

Given those specific allegations, the Court cannot say at this time that Plaintiff's alleged "injuries" for purposes of his RICO claims are all entirely based upon his disinheritance. This may be so, but in the motions the parties have not focused on, and it is unclear from the record, whether these alleged injuries are "separate and independent" from any injuries suffered before the four years prior to suit. Although these specific injuries could be part of a larger injury to deprive Plaintiff of lawful rights and benefits from Tanaka's

Estate, this question of "injury" presently remains a question of fact.

Summarizing the analysis so far: If Plaintiff did not know, or should not have known, of his "injury" in the period after he turned 18 but before four years prior to suit, then his RICO claims can proceed to the merits. If not (i.e., he did know, or should have known), and if no new overt acts caused "separate and independent" injury (e.g., if the "injury" is solely his disinheritance), then Plaintiff's RICO claims fail. However, if there was "separately accruing" injury, then the RICO claims can proceed to the merits as to such separate injury (i.e., that injury accruing within the four years prior to suit). At present, these are all questions of fact.

This may not end things. Tolling adds another variable to the complex calculus. In this regard, tolling could apply both to Yoshitaro's RICO claims as well as to Date's non-RICO claims.

### D. For the RICO claims to toll, Plaintiff must have exercised "reasonable diligence."

Even if Plaintiff's RICO claims are otherwise barred, equitable tolling could still save the claims. *See Rotella,* —— U.S. at ——, 120 S.Ct. at 1084 ("In rejecting pattern discovery as a basic rule, we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling"). Whether termed as fraudulent concealment or as equitable estoppel, the statute tolls "only if the plaintiff shows that he neither knew nor, in the exercise of due diligence, could reasonably have known of the offense." *Klehr,* 521 U.S. at 195, 117 S.Ct. 1984 (citations omitted). Plaintiffs contend that Kodani's fraud tolled the limitations period.

 "The doctrine of fraudulent concealment is invoked only if the plaintiff both pleads and proves that the defendant actively misled her, *and that she had neither actual nor constructive knowledge of*

*the facts constituting [her] cause of action[.]" Grimmett,* 75 F.3d at 514. *See also Au v. Au,* 63 Haw. 210, 626 P.2d 173, 178 (1981) ("If there is a known cause of action there can be no fraudulent concealment").

Thus, the equitable tolling analysis is similar to the question whether Plaintiff knew, or should have known, of his injury in the first place. The specific inquiry here, however, is knowledge of the *fraud.* Even assuming Kodani attempted by fraud to conceal his actions, if Plaintiff knew of the fraud there is no tolling. Did Plaintiff "[have] available all the facts necessary to discover [his] cause of action with due diligence." *Grimmett,* 75 F.3d at 515. "The limitations period does not toll simply because a party is ignorant of [his] cause of action." *Id.*

Plaintiff points to the many allegations of fraudulent activity comprising the RICO violations and argues that, if he can prove them at trial, then he necessarily will prove fraudulent concealment and toll the statute of limitations. Plaintiff contends that Kodani told him and his mother that there was nothing that could be done to contest the probate of the will, and that Kodani was thus attempting to lull the Plaintiffs into inaction. The Ninth Circuit, however, has recently reaffirmed that "[f]raudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Santa Maria v. Pacific Bell,* 202 F.3d 1170, 1177 (9th Cir.2000). Otherwise there would always be tolling in a case alleging fraud.

Nevertheless, Plaintiffs' knowledge of the fraud, as with knowledge of the injury, is a question of fact for purposes of the tolling question. If anything, the record indicates that Plaintiffs knew of their injury *before* they knew it was related to fraud.

Plaintiffs also argue that Chief Judge Ezra has already decided that there is a question of fact in a similar ruling in the TKK litigation.[4] By order dated March 9, 1999, Judge Ezra denied a motion for summary judgment by the TKK Defendants, and ruled that there are questions of fact regarding whether Kodani's alleged fraudulent acts would toll the statute of limitations in fraud claims related to wrongful probate of the revoked will.

Defendants attempt to distinguish Judge Ezra's order for a number of plausible reasons:

1) Judge Ezra's order does not deal with RICO. RICO has a harsher (from a plaintiff's perspective) accrual provision than does Hawaii common law for fraud and malpractice.

2) The defendants in the TKK litigation are different. That case is against Emerald Management Company entities; this case is against Kodani and First Hawaiian Bank. Kodani is not a defendant in the TKK litigation. Kodani had no opportunity to contest the ruling regarding tolling in the TKK litigation. This raises a question of how the defendants in the TKK litigation could be equitably estopped based upon the behavior of a *non*-defendant.

3) Judge Ezra's order was issued before *Santa Maria v. Pacific Bell,* and its statement that the fraud for purposes of tolling must be separate and distinct from the fraud upon which the plaintiff's claim is based.

Nevertheless, the Court agrees with Judge Ezra that reasonable minds could differ on the tolling question. There is also a question of fact regarding whether Plaintiff acted with "reasonable diligence" in pursuing the claims. *See Klehr,* 521

4. Plaintiffs, at times, argued that Judge Ezra has already decided that the claims in the TKK litigation have been tolled. Actually, Judge Ezra has only decided that there are questions of fact precluding summary judgment on statute of limitation questions. Presumably, if those questions are resolved adverse to the Plaintiffs in the TKK litigation, Plaintiffs' claims—as with the claims in this action—will be barred.

U.S. at 195, 117 S.Ct. 1984. Accordingly, if the analysis gets this far, it is also a disputed question of fact whether Plaintiffs' claims are equitably tolled based upon fraud.

### E. The probate of Tanaka's will does not bar the suit.

██ Kodani also asserts that Plaintiffs cannot demonstrate actual financial loss or injury for purposes of a RICO claim because Tanaka's will has already been probated in state court (in a ruling against Plaintiff's Petition to Contest Will). That ruling was affirmed by the Hawaii Intermediate Court of Appeals. Because it has been finally adjudicated that the will was properly probated, Kodani asserts that a RICO claim must fail as a matter of law.

The Court rejects Kodani's assertion. Plaintiff is not seeking by this action to set aside the probate order. Plaintiff is seeking damages allegedly caused by Defendants' fraudulent conduct. Moreover, Hawaii law recognizes that an independent cause of action for fraud may exist outside probate. *See* Haw.Rev.Stat. § 560:1–106.

### II. *The Second Motion—Date's claims against Kodani*

██ This motion is similar to the RICO motion, although it deals with all of Date's claims. The longest applicable statute of limitations is six years, which would apply for an attorney malpractice claim. Kodani contends that the evidence (primarily Date's letter to the Tennessee attorney, Jerrold Becker) indicates that Date knew of Kodani's fraud and breaches of fiduciary duty in 1989 and did not bring them until 1997 (as a 4th–party complaint). Although there is now some dispute about attorney Becker's precise role, Becker's letter of June 7, 1988, to Kodani and Takeuchi indicates that Becker was "retained by Ms. Micki Ikuko Date to represent her interests, as well as those of her son, Yoshitaro Kaiki Tanaka, in the disbursement of the assets from [Tanaka's] estate." Date at some point also apparently thought that Kodani was representing her interests, while at the same time Kodani had some relationship with FHB on estate matters.

A similar accrual analysis applies as that discussed earlier, except that Hawaii common law does not follow the harsher "injury discovery" rule for the state law claims. Hawaii would follow a rule where accrual did not take place until the fraud was discovered. *See, e.g., Yoshizaki v. Hilo Hospital,* 50 Haw. 150, 433 P.2d 220 (1967) ("statute begins to run when plaintiff knew or should have known of the defendant's negligence"); *Hays v. City and County of Honolulu,* 81 Hawai'i 391, 397, 917 P.2d 718, 724 (1996).

It appears that Date indeed knew as early as 1989 of fraud and possible malpractice. Perhaps recognizing this, as before, Date argues that equitable tolling or fraudulent concealment applies. (If the claim accrued within the statute of limitations, the tolling issue is moot.) Date points to the same evidence of Kodani's alleged fraud to support the tolling argument.

As discussed above, however, the Court agrees with Judge Ezra's order of March 9, 1999, that whether Kodani's behavior equitably tolled Date's claims is a disputed and material question of fact. It would be premature to grant summary judgment in favor of Defendants as to Date's claims.

### CONCLUSION

Summarizing this order:

1) Date's knowledge is not imputed to Yoshitaro.

2) Yoshitaro's RICO claims are subject to dismissal on statute of limitations grounds if he knew or should have known of the injury in the seven months following his 18th birthday. This is a disputed question of material fact.

3) Even if Yoshitaro did know, or should have known, of the injury, some recovery under RICO is possible (recovery for injuries occurring within the limitations period) under the "separate accrual rule." In this regard, whether injuries are "new and

independent" also raises factual questions, precluding summary judgment.

4) The RICO claims are subject to equitable tolling. If the analysis gets this far, equitable tolling is also a disputed question of fact for a fact-finder.

5) Similarly, Date's knowledge would bar her (vice Yoshitaro's) claims, subject only to equitable tolling. However, consistent with Chief Judge Ezra's order of March 9, 1999, in the TKK litigation, equitable tolling as to Date's claims is presently a disputed question of fact.

For the foregoing reasons, Defendants' motions for summary judgment and partial summary judgment are DENIED.

IT IS SO ORDERED.